Good morning, Judge Carson. May it please the court, my name is David Bovino and I represent Susanna Dailey, the appellant in this matter. Could you pull the mic up? I think there's also a button to raise that could help. Alright, go ahead. Thank you. Rape. Rape is different than every other violent crime. Two-thirds of rapes go unreported. Conversely, nearly 100% of murders, robberies, kidnappings go reported. I ask rhetorically, why do two-thirds of rapes go unreported? Two reasons. Shame and blame. Ms. Dailey was on track to becoming a statistic, a part of this statistic, until she read a newspaper article about her assailant, the defendant in this case, Mr. Hecht. She read in the newspaper that Mr. Hecht had violently, criminally assaulted another woman. However, the district court applied a blanket evidentiary exclusionary practice to evidence in this case. And the jury was not allowed or permitted to understand why Ms. Dailey came forward and subjected herself to what all victims of sexual assault are subjected to. That's not entirely fair, is it? I think it's fair to say that the district court did allow Ms. Dailey to say why she came forward, that it was based on an article. What he didn't allow the jury to find out was it was because of another allegation of harassment, which he said would be unfairly prejudicial under Rule 403. It's correct that the district court instructed that Ms. Dailey could say that the reason she came forward and reported the rape two years after it had happened was because she had read about Mr. Hecht in a newspaper, but she was not allowed to describe what her motivation was in coming forward, which left the jury to speculate what was in the article. And it also gave defense counsel the opportunity to impugn the motivations of Ms. Dailey in this case. Why was it an abusive discretion for the district court to say, I am going to allow the jury to find out that she didn't come forward for a substantial period of time? And the reason for it is that she was alerted to something. And so perhaps the jury was led to speculate, but why was it an abusive discretion for the district court to say, ladies and gentlemen of the jury, you're going to be confined to whether or not he committed a rape in this case, whether or not he committed a sexual assault on somebody else, would be incredibly and unfairly prejudicial. Because then the jury could, as we know, could speculate in the jury room that, well, he must have done it this time because he had done it before. And which is exactly the reason that we have very substantial evidentiary restrictions in Rule 404, Rule 608, with regard to extrinsic evidence of other misconduct. Well, that's a great question, Judge Baccarat, and I'm going to get to your question in a second. But let's just assume for a second that I refuse to answer your question right now. And I tell you, I'm not going to tell you why I'm not going to answer your question. Just trust me, I'm not going to answer your question because it's not relevant. And after you decide the disposition of this appeal, I will explain to you why I didn't answer your question. That's exactly what happened to Ms. Daly in this case because of the use of the solicitation of juror instructions was so inextricably intertwined with the judge's evidentiary exclusions in this case. There were 19 juror questions that were solicited from the jury for witnesses in this case. Two of those questions went directly to Ms. Daly and they inquired, Ms. Daly, what did you read in the newspaper that prompted you to come forward and call the sheriff two years after the sexual assault? Ms. Daly, what did you read in the newspaper that prompted you to come forward and report the sexual assault to the district attorney? Well, let's talk about that for a moment because that sort of goes to your issue of the judge allowing the jurors to ask questions at all, right? That's correct, Judge Carson. You agreed in that to an instruction. I mean, you proposed your own instruction, didn't you, or an agreed-upon instruction to the jurors about those questions? That's incorrect. Counsel had stipulated two jury instructions in this case. However, the district court disregarded that stipulation and instead decided to use its own practice of soliciting juror questions for witnesses in this case. But you agreed to have the jurors submit questions to the court? There was a stipulation between counsel for that jury instruction. You permitted that. Which was disregarded by the district court, correct. Well, but you agreed that the instruction may have been disregarded, but you agreed that the jurors could ask the questions. Correct. Hold on a minute. So the next step to that is, you know, once you agreed they can ask the questions, I mean, how can you complain about the fact that they did? Well, when the stipulations were entered into between counsel, there were 13 motions in limine which had not yet been ruled on in this case, and it was not foreseeable at that time, at least to counsel. Perhaps it was to the district court that the jury would be probing into the victim or Ms. Daly's motivations for coming forward in this case. Well, let me ask you this. Did you tell the district judge after he rejected your stipulation, Judge, since you've rejected that stipulation, we don't think it's proper for the jurors to ask questions anymore? There was not an objection preserved for the judge's use and practice of soliciting juror questions for witnesses. However, objections were made to, in the limine motions, and with respect to the limine rulings, with respect to several of the juror questions that were asked in this case of the witnesses, which the district court refused to ask these questions of the witnesses, thereby leaving them to speculate just what it was that Ms. Daly read. And I would like to respond to Judge Dockrocks. Okay. And I certainly don't want to intrude on your ability to respond to my earlier question, but I do want to follow up on what you just said because it confused me. You're saying, so your answer to Judge Carson was, as I understand it, well, we didn't agree to this. You know, we stipulated and we didn't lodge an objection to the fact that he was going to ask questions. And now you're saying, but we did object to, on the in limine motions, to the idea that the judge was going to refrain from asking some questions. In other words, as I understand what you're saying is, we're not saying, panel, that the district judge asked any improper questions. We're saying he shouldn't have asked questions. But when we can point to identifiable errors in the questioning, it was he should have asked some more questions. Is that, did I misunderstand? Not exactly. What I'm saying is when the jury posed questions going to one of the ultimate issues in this case, which was Ms. Daly's motivations in coming forward. He should have asked more questions. The jury should have been provided to know the answers to these questions. So he didn't go far enough in allowing jury questioning. No. You're not saying that there was anything improper in any of the questions that he actually asked, right? Or is it? There were several. Or are there any identifiable errors in the questions that the judge asked? Not in the question. Just in the entire practice, there was error in this specific case. But with respect to the specific questions, the error was in the relevance that the jury was asking what motivated Ms. Daly to come forward two years afterwards, and the judge not allowing her to tell the jury why she did. And I would like to answer your initial question, which was an important one, which was the evidence of what was in the article was not being offered for the truth of the matter asserted. It was being offered to show what Ms. Daly's state of mind was in coming forward. Like so many other victims of sexual assault, Ms. Daly came forward after she realized that she was not the only one. She saw that other women were being criminally assaulted, or at least that's what she believed. Whether or not that was true or not could have been corrected by a jury instruction by the district court. But the compounding effect of this blanket exclusionary evidentiary practice implemented by the court in this specific case, with the use of jury questions, made this trial manifestly unfair and prejudicial, warranting reversal. Now, there is a contrary position, though, isn't there? From the district court's point of view, you're letting her testify about this article and what it said about him committing other assaults. The district court felt like that might turn this into a trial on his character, where the jury would be deciding the case not on the evidence of what he did with respect to this plaintiff, but maybe with what he had done to others in the past. That's correct. That was the district court's logic. However, for purposes of this appeal, it's critical that Your Honor understand that there's a distinction between unfair prejudice and fair prejudice. And in this case, evidence of Ms. Daly's motivations for coming forward was fair prejudice, her state of mind, her motivation. What prompted her to come forward? I mean, he didn't rule on it because it would be unfair to her. He did it because he thought it would be unfair to the defendant, that prejudice was flowing to the defendant. But this was fair prejudice that should have come in, and that was error. It could have been cured with an instruction that the information was not, in the article, was not being offered for the truth of the matter asserted. So you do agree that this is reviewed under an abusive discretion review? With respect to the jury questions and the solicitation of jury questions for witnesses, the panel has three options. It can follow the Minnesota Supreme Court, which found a per se rule outlawing jury instructions outright. Let me back you up a second. Let's talk about the 403 issue. Well, Your Honor, I would respectfully request to submit the balance of my time for rebuttal. Okay. Could you go ahead and, on the 403 issue, is that an abusive discretion review? Do you agree with that? I do agree with that. Okay. Thanks. Thank you. Good morning, Your Honors. My name is Mike Plocky from Rothcarber Christie in Denver, appearing on behalf of Mr. Hecht. I'd like to begin today by picking up on the questions that were asked about the newspaper article. When we talk about Ms. Daly's delay, it's important to remember that there are two different aspects to delay. The first is the reason she delayed for more than a year to come forward after the alleged assault. And then there's a separate issue, which is why did she ultimately come forward? There's no dispute that Ms. Daly was given unfettered ability to explain why she delayed for a full year and a half before coming forward to the police. She told them that she didn't want to embarrass her mother, that she didn't want to get the Mexican authorities involved, that she talked to a counselor who encouraged her to put this event behind her, and she thought it was so important to put the event behind her that she actually intentionally destroyed the only physical evidence in this case. So she was able to explain why she waited a year and a half to come forward. Then we get to the question of why did she ultimately come forward, which is what this newspaper article is about. And Judge Bacharach, you're right, she was able to say, well, I read about him in the newspaper. But in reality, she was able to say much more than that. Through clever questioning, as Judge Jackson noted, she was able to essentially give the jury a clear sense of what the newspaper said without going into details. She even said to the sheriff and the DA, if you need me to testify, I'm willing to come help, which sent a pretty clear message to the jury what that article was about. But more important than that, she was asked by her counsel, why are we here? In other words, why did you file a lawsuit? Why are we in litigation? And she was able to answer that question. Now, as I read her brief, she says, what I wanted to be able to say is, I'm here because I wanted to protect other women from harm. And she could have said that. She had the opportunity to give that answer, but she didn't. When asked why we're here, why she filed a lawsuit, she said, because I'm angry, I'm rageful. And she said, quote, I did it for me, end quote. That's at A564. So she was able to explain both sides of this equation, why she delayed in coming forward and why she ultimately came forward. She told the complete story. I'd like to now shift gears, if I may, to the first two arguments in the defendant's brief, which relates to drug use. I think it's important to acknowledge that these two issues, while somewhat related, are separate and distinct and have to be addressed separately. The first issue relates to Mr. Hecht's prescription drug use on the day of the incident. And they argue that it was an abuse of discretion under Rule 403 to exclude that evidence because the prescription medicine Mr. Hecht was taking could have impaired his ability to perceive events and to remember things. So was there any evidence in the record that showed that his drug use could affect his memory of the events in question? None, Your Honor, which is why Judge Jackson ruled the way he did. So tell me about, procedurally, how that went down below. Because I think I do recall the judge may have even invited them to put forth some evidence that that could cause memory loss or impair his ability to remember things. And then what? Just nothing happened after that? That's exactly right, Your Honor. Judge Jackson, when this issue was presented to him, acknowledged that this court's precedents show that drug use at the time of an incident can be relevant. But here, there was no evidence that Mr. Hecht was impaired or intoxicated. Mr. Hecht said he wasn't. Ms. Daly, who had a chance to observe him, said he didn't appear to be intoxicated. So we're in a very unique position. The relevance here was very, very minimal. The risk of prejudice of talking about a defendant, not if third-party witnesses was the case in the Smith case in the Tenth Circuit, but a defendant taking opioids, the risk of prejudice was very high. And so Judge Jackson said, look, on that record, the 403 balancing test indicates that the evidence should be excluded. But, plaintiff, I'm going to throw you a lifeline. If you've got an expert who can come in and say that five milligrams of Percocet could affect someone's memory or ability to perceive events, bring him forward and I'll let the evidence in. The plaintiff didn't accept that invitation. They never designated an expert. It's interesting that they'd already designated a pharmacologist to testify as an expert in their case. They could have easily supplemented the report if that pharmacologist did, in fact, believe that five milligrams of Percocet could impair judgment or memory, and they didn't do that. They never made a proffer as to what an expert would show. Last but not least, Judge Carson, we timely designated an expert to testify about the impact of prescription medication on Ms. Daly. We did that before the expert deadline, and our expert said that the prescription medication she was taking could have impacted her memory. And so not only did Judge Jackson give them an invitation in his order in limine to come forth with an expert, candidly, in our view, they should have designated such an expert long prior to that date. So that's the first issue on prescription drug use. The second issue is an entirely different issue. It relates to Mr. Heck's historic drug use. It's not related to the day in question. It's that he's taken drugs allegedly throughout the course of his life. This is purely a Rule 608 issue. Ms. Daly claims that they should have been allowed to impeach Mr. Heck, their terminology. Basically what they're saying is he gave one answer in a deposition in this case, not at trial, one answer in a deposition in this case that was inconsistent with an answer he gave in another case. And that somehow should have come into evidence. We submit that that's incorrect for several reasons. The first of which is under Rule 608, evidence of specific conduct in the past is only admissible if it relates to truthfulness. And this Court has made clear that drug use does not relate to truthfulness. So under 608, there's no path to getting an evidence of drug use. What 608 might have allowed, if what they're saying now, as I understand it, is it's the fact that he gave inconsistent answers under oath that is relevant. What they could have asked under 608 but didn't is, Mr. Heck, isn't it true that you lied in your deposition? Isn't it true that you gave inconsistent answers in your deposition? That would have been perfectly permissible under Rule 608. And it wasn't precluded by the judges in limine order, which related only to drugs. So they could have asked the question that they now suggest they should have been able to ask. They just didn't ask the question. Well, the corollary to that, though, is if your client had said, no, I didn't, then it ends it right there, right? Under Rule 608, that's correct. And our client may well have said, you know what, the questions that you asked were vague. I think there may have been some inconsistencies. That would have ended it as well. The fact of the matter is we don't know because they didn't ask the question. Okay, go ahead. I'm sorry, Your Honor. No, you're fine. I don't have any further remarks today unless the Court has questions. I will see you the remainder of my time. Was there a stipulation by the parties to permit the jurors to ask questions? There was, Your Honor. We submitted a stipulated jury instruction to the Court. Judge Jackson said, I agree with that in concept, but I'm going to use my own language to do so. He then prepared his own instruction that he tendered to the parties that we reviewed, and there was no objection from Ms. Daly. He then gave that instruction at trial, and there was no objection by Ms. Daly. The jury then asked questions, and I think counsel noted that there were 13 questions that were ultimately submitted to the jury, and she objected to none of them. They raised this argument for the first time on appeal, which we think is improper. When the jurors asked the question about what was in the newspaper article, what was the colloquy between the parties and the Court over that issue? Do you recall? The Court, as I recall, Your Honor, was concerned of the issue you discussed earlier, which is if we get into the substance of the newspaper article, this misdemeanor charge for domestic violence where he pulled the woman's purse strap, that we're going into 404B land, we're going into issues that 403 precludes, it was going to be incredibly prejudicial. That had all been dealt with on in limine motions, and candidly it's interesting to me that Ms. Daly doesn't seem to be asking this Court to rule on the substance of that ruling on this appeal. They're trying to do an end-run around it. Do you have any comments on the issue about the judge making a comment? The alleged comment? Yes. We've got several things to say about that. The first is that this affidavit that has been tendered to the Court is flatly contradicted by the transcript of the proceedings. It doesn't appear in the transcript. None of the lawyers heard it, and so we think that's a dispute as to what occurred. The affidavit is not properly in the record. This is a disputed issue as to what occurred in the trial court, and under Rule 10E, Ms. Daly was required to raise that with the trial court, not ask this Court to be a fact finder, and so she failed to do that. We'd also note that the substance of this argument, even if the affidavit were in the record, has been waived. According to the affidavit itself, the paralegal brought this alleged statement to the attention of the lawyers during trial, and they elected, they made an intentional decision according to their briefs and the affidavit, not to raise this issue with the trial court, which is a waiver. I'd note that they didn't simply waive it on the day the alleged statement was made, but they didn't raise it in a motion for new trial, nor did they ask the trial court to correct the record, which is really the problem from our perspective. This statement, had it been made, is something that could have been resolved through a curative instruction, I believe. They didn't give the judge the opportunity to do that because they failed to object. They haven't asked the Court to remand this matter to the trial court to resolve this dispute, so I don't think that's before the Court, but I would also note that it would be grossly unfair, I believe, to Judge Jackson to do that at this point. We're now 16 months out, 15 months perhaps, when this issue is raised for the first time, and to ask Judge Jackson, who has a very, very busy docket and tries a lot of cases, to search his memory, to try to sort out this issue now 15 months after the fact is unfair, and it's exactly why we require contemporaneous objections on issues like that. Thanks. Thank you, Your Honor. Thank you. I want to follow up on the questioning by the jury. What is your issue on that point? Are you contending that it was error for the Court to permit juror questioning, or are you contending it was error to submit and permit the questions that were asked? Are we challenging the process or the questions themselves? Both, Your Honor, and may I take it one at a time? Sure. So in the first instance, we agree with the Second Circuit in the Omjal case in which the Court applied a standard of reversible error, but we also believe that this Court has the ability to reverse based on plain error. Should the Court wish to adopt a per se rule, which is in its discretion to do, it could adopt the same rulings of the Minnesota Supreme Court, which does not apply a harmless analysis test in determining. But to be clear, I thought that you and your opposing counsel agreed before trial to this procedure, that the Court could do this, could receive questions from the jury and respond to them and have you all respond to them. Is that true? There was a stipulated jury instruction that was disregarded in exchange for the district court using its own instructions, but generally what you're saying is correct. Okay. There was an agreement, and it's our position that it was not foreseeable, the prejudice that would befall Ms. Haley based on the lemonade rulings. And I would also like to add in response to my adversary's position that the fact that the defendant was a drug-fueled, wife-beating abuser of women who had consistently perjured himself under oath permeated every aspect of his life and was inextricably intertwined with the evidence of this sexual assault. And the jury was told by the judge that they could ask questions, and they did ask questions of witnesses probing into these issues, yet the judge did not answer those questions. And the laws of human nature have not been repealed. The jury wanted to know what motivated Ms. Haley to come forward. And with that, I'll rest. Thank you. Thank you, counsel. Thank you both for your arguments this morning. The case is submitted.